[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 INTRODUCTION
Each of the above captioned matters, which were consolidated for hearing, is an appeal from the freedom of information commission ("commission"). They arose as follows:
 On February 1, 2001, Jeffrey Mitchell requested from the Chief ("chief') of the New Haven Police Department ("police department"), pursuant to the Freedom of Information Act, General Statutes § 1-200 et seq., copies of papers and of a tape recording concerning the murder in New Haven, on December 4, 1998, of Suzanne Jovin;
 On March 2, 2001, Les Gura, City Editor of the Hartford Courant ("Courant"), on behalf of himself and the Courant (Gura and the Courant are hereinafter referred to, collectively, as the "Courant"), requested from the chief the opportunity to view everything in the possession of the police department relating to the Jovin murder;
 The chief denied, in writing, the request of Mitchell on the ground that "the information you are requesting is exempt from release. The incident is an on-going murder investigation and is an open case. Release of information regarding this on-going murder investigation would be prejudicial to future law CT Page 13765 enforcement action." (Return of Record ("ROR"), p. 19);
 The chief denied, in writing, the request of the Courant with the following explanation: "As we have previously discussed in our telephone conversation, the case is an on-going murder investigation. Release of information regarding this on-going murder investigation would be prejudicial to future law enforcement action and could compromise the safety of individuals who have provided information to police." (ROR, p. 20);
 Thereafter, Mitchell and the Courant appealed the chiefs denials of their requests to the commission. Those appeals were consolidated for hearing by the commission. Prior to the hearing, James G. Clark, Assistant State's Attorney, moved that the State of Connecticut be permitted to intervene in both appeals. At the hearing, that motion was granted, and since then the parties have treated Michael Dearington, State's Attorney for the judicial district of New Haven, as an intervening party before the commission;
 The parties treated the Mitchell and Courant requests as seeking the same materials, and the chief waived his claim of exemption from disclosure as to some of them. The materials as to which the chief maintained his claim of exemption consisted of approximately 4,500 pages;
 The commission sustained the appeals of Mitchell and the Courant, and it ordered the chief to allow inspection and copying of some of the requested materials; and
 The chief and Dearington each brought a separate appeal of the commission's decision in each of the two matters before it, resulting in the four captioned appeals pending in this court. This decision addresses and decides each of those four appeals.
 PROCEEDINGS BEFORE THE COMMISSION
Section 1-21j-8 (a) of the Regulations of Connecticut State Agencies CT Page 13766 ("regulations"), which was promulgated by the commission, provides, in relevant part: "The commission . . . may designate . . . a hearing officer for the purpose of conducting any contested case. . . .
Section 1-21j-8 (b)(1) of the regulations provides, in relevant part:
 No oral testimony or argument shall become a part of the record or form a basis for any finding of the hearing officer unless the hearing officer is present in the place where the hearing is being conducted and personally hears or receives the testimony and argument there offered.
Section 1-21j-8 (b)(2) of the regulations provides, in relevant part: "Upon conclusion of the hearing, the hearing officer shall submit a proposed final decision to the commission which proposed final decision shall contain the hearing officer's findings of fact, conclusions of law and recommended order."
The commission designated Attorney Barbara E. Housen as the hearing officer for purposes of both appeals which were before it. Housen conducted a consolidated hearing on both appeals, at which she received oral testimony from, among others, Lieutenant Brian Norwood of the police department.
Following the hearing, Housen conducted an in camera review of the 4,500 pages as to which the chief maintained his claim of exemption (ROR, p. 125), after which she submitted to the commission her proposed final decision, recommending that the appeals of Mitchell and the Courant be denied, with the exception of those materials as to which the chief had waived his claim of exemption.
Thereafter, at a meeting of the commission, the commission considered Housen's proposed final decision, and the following exchange took place:
 Pearlman [Executive Director of the Commission]: May I suggest slightly different language that I think will accomplish the same thing? That the motion be to remand the case to a Commission member or members to review the documents in question in camera and to report to the Commission.
 Russo [Commissioner]: So moved.
O'Connor [Commissioner]: Second. CT Page 13767
O'Keefe [Chairperson of Commission]: All those in favor? {Aye}.
(Supplemental Return of Record ("Supp. ROR"), p. 255.)
Subsequently, the commission issued the following notice, addressed to "Commissioner Dennis E. O'Connor":
 This is to confirm your designation by Mitchell W. Pearlman as successor Hearing Officer in the above-captioned matter in lieu of Attorney Barbara E. Housen.
 A written report of the facts and issues, and your recommendations for an order, should be prepared when you have completed this matter.
(ROR, p. 155.)
O'Connor, who was not present at the hearing before Housen (ROR, p. 55), thereafter performed an in camera review of the 4,500 pages as to which the chief continued to claim exemption, after which O'Connor submitted to the commission a "Proposed Final Decision of Second Hearing Officer" in each appeal before it (separately and collectively the "O'Connor proposed decision"; ROR, pp. 158-63, pp. 165-70) which contained his recommendations for findings of fact, conclusions of law and orders. Paragraphs 19 and 20 of the O'Connor proposed decision in the Mitchell appeal and paragraphs 20 and 21 of the O'Connor proposed decision in the Courant appeal state that the testimony of Norwood was not credible and that the chief failed to establish the validity of the exemption he claimed. The O'Connor proposed decision ordered the chief to disclose the requested materials, with any appropriate redactions.
The commission distributed to the parties copies of the O'Connor proposed decision, and it also noticed a meeting of the commission for the purpose of considering the O'Connor proposed decision, as well as oral and written argument from the parties regarding it. The chief filed a brief objecting to the adoption by the commission of the O'Connor proposed decision as its decision, and Dearington submitted a letter (the "Dearington letter"; ROR, pp. 194-95) urging rejection of the O'Connor proposed decision.
Thereafter, the commission adopted the O'Connor proposed decision as its final decision in the appeals of Mitchell and the Courant. CT Page 13768
 DISCUSSION
Presence of Hearing Officer When Testimony is Given
The threshold issue in this case concerns the requirement of §1-21j-8 (b)(1) of the regulations that a hearing officer must be "present in the place where the hearing is being conducted and personally [hear] or [receive] the testimony and argument" which is "part of the record or [forms] a basis for any finding" of the hearing officer. That regulation is triggered in this case by paragraph 19 of the O'Connor proposed decision in the Courant appeal and by paragraph 20 of the O'Connor proposed decision in the Mitchell appeal, which state:
 It is further found that the testimony of the respondent's sole witness [Norwood] with respect to whether the requested records had been disclosed to certain third parties by the respondent is not accurate. In camera document IC-III, pages 2001-131/147-2501 and 2502, clearly contradicts such testimony. Consequently, the Commission finds the testimony of such witness not credible and the claim that disclosure of the remaining records at issue would be prejudicial to a prospective law enforcement action implausible.
(Emphasis in original.) (ROR, p. 161, ¶ 20; p. 168, ¶ 19); and by paragraph 20 of the O'Connor report in the Courant appeal and paragraph 21 in the Mitchell appeal, which state:
 It is therefore found based upon the findings in paragraphs . . . through . . . above, that the respondent failed to prove that disclosure . . . would not be in the public interest because it would result in the disclosure of information to be used in a prospective law enforcement action and would be prejudicial to such action, within the meaning of § 1-210 (b)(3)(C), G.S.
(ROR, p. 162, ¶ 21; p. 168, ¶ 20).
To recap: O'Connor was not present when Norwood testified; the O'Connor proposed decision finds Norwood's testimony "not credible"; and, that finding is a basis for the O'Connor proposed decision's conclusion that the chief and Dearington failed to meet their burden of establishing that CT Page 13769 the "disclosure of . . . [the requested] records would not be in the public interest because it would result in the disclosure of . . . information to be used in a prospective law enforcement action . . . [which would be] prejudicial to such action. . . ." General Statutes § 1-210 (b)(3)(c).
Because the issue before the commission was whether the chief and Dearington had met their burden of establishing the exemption claimed under General Statutes § 1-210 (b)(3)(c), and because the Norwood testimony was expressly a basis for O'Connor's finding that that burden had not been met, the finding by O'Connor that Norwood's testimony was not credible (which was material to the commission's decision) was made by a hearing officer who was not personally present when testimony was given.
The commission and the Courant note, correctly, that it would have been proper for O'Connor, acting as a commission member who had not heard the evidence or argument (rather than as a hearing officer), to prepare a decision for the commission. From that they argue that form would be exalted over substance if O'Connor were held to the requirements which govern hearing officers.
Section 1-21j-8 (a) of the regulations expressly authorizes the designation of a commission member as a hearing officer, as follows:
 The commission, by its executive director or his or her designee, may designate a member of the commission or any other person authorized by statute to be a hearing officer for the purpose of conducting any contested case or other proceeding the commission shall conduct under the freedom of information act.
Two aspects of § 1-21j-8 (a) of the regulations bear on this matter: first, it clearly anticipates the designation of commission members as hearing officers; and, second, it draws no distinction between the authorities of, and restrictions on, commission member/hearing officers and non-commission member/hearing officers. Because there is no ambiguity in the language which establishes the regulatory scheme governing commission members who act as hearing officers, the court concludes that a commission member, when acting as a hearing officer, removes the hat of commission member and assumes the hat of hearing officer.
Similarly, there is no ambiguity concerning the capacity in which the commission intended O'Connor to act. Documents captioned "Designation of CT Page 13770 Successor Hearing Officer", which bear the captions of the Mitchell and the Courant appeals before the commission, which are addressed to "Commissioner Dennis E. O'Connor," state:
 This is to confirm your designation by Mitchell W. Pearlman as successor Hearing Officer in the above-captioned matter in lieu of Attorney Barbara E. Housen.
 A written report of the facts and issues, and your recommendations for an order, should be prepared when you have completed this matter.
(ROR, pp. 155-56.)
Further, in documents captioned "Transmittal of Proposed Final Decision of Second Hearing Officer dated January 23, 2002" in each appeal before it, which were served on the parties, the commission stated:
 "In accordance with Section 4-179 of the Connecticut General Statutes, the Freedom of Information Commission hereby transmits to you the January 23, 2002 proposed finding and decision by the second hearing officer in the above-captioned matter."
(ROR, pp. 157, 164.)
The excerpted documents leave no question that the commission intended O'Connor to act as a hearing officer and not as a commission member. Likewise, there is no ambiguity about the capacity in which O'Connor believed he was acting. Documents authored by O'Connor, served on the parties and filed with the commission in each appeal before it are captioned "Report of Second Hearing Officer," and state:
 At the October 10, 2001 meeting, this matter was remanded to a member of the Commission to conduct an in camera review of the records at issue as a new hearing officer and report back to the Commission. Thereafter, Commissioner Dennis E. O'Connor, as hearing officer, conducted an in camera review of the records at issue.
(ROR, pp. 158, 165.)
Beneath the signature of O'Connor on each "Report of Second Hearing CT Page 13771 Officer" was the title, "Commissioner Dennis E. O'Connor as Hearing Officer." (ROR, pp. 163, 170.)
Because the commission intended O'Connor to act as a hearing officer, and because O'Connor believed he was acting as a hearing officer, it is concluded that O'Connor did act as a hearing officer and, as such, was bound by § 1-21j-8 (b)(1) of the regulations which requires hearing officers to hear testimony and argument which is included in the record or which is relied upon for a finding. The question thus posed is whether the commission s non-compliance with § 1-21j-8 (b)(1) of the regulations fatally flaws the commission's orders.
Effect of Non-Compliance
The commission and the Courant argue that any non-compliance by the commission with the regulations was excused or justified on one or more of the following grounds:
 That portion of § 1-21j-8 (b)(1) of the regulations which requires a hearing officer to be present for testimony on which a finding is based conflicts with General Statutes § 4-179 (a);
 Any non-compliance with § 1-21j-8 (b)(1) of the regulations was a deviation which is permitted by § 1-21j-13 of the regulations; and
 The failure of the chief or Dearington to refer, expressly, to § 1-21j-8 (b)(1) of the regulations in their objections to the commission's adoption of the O'Connor report as its final decision constituted a waiver of any such objection, or it had the effect of estopping them from raising that issue in these appeals.
 1. Conflict with Statute
In Andersen Consulting, LLP v. Gavin, 255 Conn. 498 n. 15 (2001), Justice Borden noted:
 It is well established that an administrative agency's regulations are presumed valid and, unless they are shown to be inconsistent with the authorizing statute, they have the force and effect of a statute. This presumption is further underscored by the Uniform CT Page 13772 Administrative Procedure Act, General Statutes § 4-166
et seq., which provides for legislative oversight through the legislative regulation review committee prior to approval of the regulations. General Statutes § 4-170.
(Citations omitted; internal quotation marks omitted.) Id., 521 n. 15.
The commission argues that, the Andersen Consulting footnote to the contrary notwithstanding, its regulation conflicts with General Statutes § 4-179 (a), and that the statute must trump its regulation. That statute states:
 When, in an agency proceeding, a majority of the members of the agency who are to render the final decision have not heard the matter or read the record, the decision, if adverse to a party, shall not be rendered until a proposed final decision is served upon the parties, and an opportunity is afforded to each party adversely affected to file exceptions and present briefs and oral argument to the members of the agency who are to render the final decision.
As they relate to this case, the relevant provisions of that statute are best understood in the context of the entire legislative scheme for the conduct of hearings by hearing officers, which includes:
 General Statutes § 4-176e, which permits an agency to designate a hearing officer;
 General Statutes § 4-179 (c), which provides, in relevant part, "a hearing officer shall, after hearing a matter, make a proposed final decision";
 General Statutes § 4-179 (b), which provides that a "proposed final decision . . . shall . . . contain a statement of the reasons for the decision and a finding of facts and conclusion of law on each issue of fact or law necessary to the decision"; and,
 General Statutes § 4-179 (a), which requires the submission of a "proposed final decision" to an agency when a majority of its members "have not heard the matter or read the record."
CT Page 13773
The synthesis of those statutes is that when a majority of the members of a multi-member agency have not heard the evidence or read the record in a matter, the agency may appoint a hearing officer who must submit to the agency a proposed final decision which must be the subject of a hearing at which parties may object to the agency's adoption of that proposed final decision. Those statutes implicitly acknowledge that, in many cases, time does not permit a non-state employee who is a member of an agency to hear, personally, all the testimony presented in every matter before the agency. In response to that fact, those statutes provide that, in order to minimize the demands on the time of agency members by such cases, a hearing officer may be appointed to conduct a hearing and receive testimony. There is no suggestion in those statutes that a hearing officer need not personally be present to receive testimony which is relied upon, and no precedent, prior to these appeals, can be found for such a practice. In short, the tenor of those statutes is that it is the function of a hearing officer to take testimony, and hear argument, personally. (Otherwise a hearing officer would not be able to ask questions of a witness on a subject deemed pertinent which was not adequately explored on direct or cross examination, to consider demeanor in evaluating a witness' credibility, or to ask questions of parties or counsel on argument, before preparing a proposed final decision.)
The commission and the Courant nonetheless argue that Pet v. Departmentof Health Services, 228 Conn. 651 (1994), stands for the proposition that any agency regulation affording greater procedural safeguards than those provided by General Statutes § 4-179 (a) is in conflict with that statute and must fall to the greater weight of the statute. However Pet
dealt with the question whether the due process safeguards of General Statutes § 4-179 (a) passed constitutional muster, and did not involve an agency regulation which provided protections over and above those required by due process. No party has submitted any authority for the proposition that General Statutes § 4-179 (a) preempts the field of procedural safeguards at the agency level, and the court's efforts have not exposed any such authority. Therefore, in reliance on the presumption of validity of a regulation, and in conformity with the policy of permitting agencies to establish their own procedural systems within constitutional and statutory limits, as provided in General Statutes § 4-167 (a), the court concludes that § 1-21j-8 (b)(1) of the regulations is not in conflict with General Statutes § 4-179 (a).
 2. Deviation
Section 1-21j-13 of the regulations provides: "Where good cause appears, the commission or any presiding officer may permit deviation from CT Page 13774 sections 1-21j-l to 1-21j-57, inclusive, of the regulations of Connecticut state agencies, except where precluded by statute." The commission argues that, pursuant to § 1-21j-13 of the regulations, the requirement of § 1-21j-8 (b)(1) of the regulations that a hearing officer must personally hear any testimony on which a proposed finding is based was waived by the commission when it designated O'Connor as successor hearing officer.
The transcript of the commission's meeting of October 10, 2001 (Supp. ROR, p. 255) reflects that no "good cause", as required by § 1-21j-13
of the regulations for a deviation, was apparent or was found by the commission. In fact, the transcript does not reflect that the commission expressed a desire or intent to deviate from its regulations.
In effect, the commission argues, in hindsight, that O'Connor's designation must have constituted an implied or de facto waiver of the regulations. Adoption of this argument would ratify, retroactively, any violation of the regulations by calling on the court to infer, simply from a violation, an unexpressed intention to deviate. When a departure from the regulations is announced or authorized in advance, it is a deviation from the regulations. When a departure is announced or acknowledged in arrears, it is a violation of the regulations.
 3. Waiver and Estoppel
The commission and the Courant argue that: the chief and Dearington did not raise, before the commission, objection to the fact that O'Connor had not personally heard testimony on which he relied; the chief and Dearington thereby waived any objection to the O'Connor report based on § 1-21j-13 (b)(1) of the regulations; and, the chief and Dearington are now estopped from raising that issue in these appeals. This argument ignores the language of the Dearington letter (ROR, pp. 194-95) which was received by the commission at the meeting at which it adopted the O'Connor proposed decision. The Dearington letter states, in relevant part:
 The State of Connecticut Division of Criminal Justice submits that the Commission should reject the Proposed Final Decision of the Second Hearing Officer dated January 23, 2002, and adopt the Proposed Final Order of the Hearing Officer dated August 28, 2001, for the following reasons:
 1. The Second Hearing Officer was not present for the evidence in this case. For one who has not had an CT Page 13775 opportunity to observe the witnesses to reject their testimony based upon an ambiguous statement in a letter not written by the witness is a gross abuse of discretion.
"Waiver is the intentional relinquishment or abandonment of a known right or privilege. . . ." (Citations omitted; internal quotation marks omitted.) New Haven v. Local 884, Council 4, AFSCME, AFL-CIO,237 Conn. 378, 385 (1996). In short, a right is waived only when one intends to waive it.
While the quoted excerpt from the Dearington letter does not expressly invoke § 1-21j-13 (b)(1) of the regulations by number, it clearly expresses Dearington's objection to the adoption of the O'Connor proposed decision on the ground that O'Connor was not present at the presentation of testimony. That clear expression of Dearington's objection cannot be distorted to support the inference that Dearington intended to waive his right to object. Accordingly, it is concluded that Dearington did not waive that objection.
As to the claim of estoppel:
 [I]t is the burden of the person claiming the estoppel to show that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge. . . .
(Citations omitted; internal quotation marks omitted.) William RaveisReal Estate, Inc. v. Commissioner of Revenue Services, 43 Conn. App. 744,753 (1996).
Because the commission is presumed to be familiar with its own regulations, and because the Dearington letter was sufficiently clear to put the commission on notice that Dearington objected to the commission's ignoring the requirement of § 1-21j-8 (b)(1) of the regulations, the commission could not, in the exercise of due diligence, have relied on Dearington's failure to cite the number of the section of that regulation as a basis for estoppel.
Prejudice
Pursuant to General Statutes § 4-183 (j), a finding by the court that substantial rights of an appellant have been prejudiced by agency action is a prerequisite to sustaining an appeal. In this case, the court CT Page 13776 finds that the ability of the chief to identify and apprehend a suspect, and the ability of Dearington to prosecute such a suspect, would be prejudiced by the disclosure, at this time, of the materials as to which exemption has been claimed.
 CONCLUSION
It is found that substantial rights of the chief and of Dearington have been prejudiced by the decisions of the commission, which were made upon unlawful procedure. Therefore, each of the four appeals before the court is sustained.
Because these appeals are decided on procedural grounds, the substantive issues raised by the claimed exemption have not been addressed. If Mitchell and/or the Courant wants to pursue disclosure of the police department's Jovin file, it is presumed that, in addition to the materials sought in their requests of February and March 2001, the materials which have been added to that file in the months following will also be sought. Accordingly, new hearings on the original requests, which are the subject of these appeals, are not likely to resolve these matters. For that reason, the court is not remanding these matters to the commission, but leaves Mitchell and the Courant to pursue whatever avenues they elect.
 ___________________ G. Levine, J.
CT Page 13777